UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

S. L. V., et al.,
          Plaintiffs,

v.                                              Case No. SA-21-CV-0017-JKP

JEFFREY A. ROSEN, et al.,
          Defendants.

## MEMORANDUM OPINION AND ORDER

The Court has under consideration *Plaintiffs' Emergency Application for Temporary Restraining Order* (ECF No. 2), which the Court considers as a motion for preliminary injunction in accordance with its Administrative Order to Stay Removal (ECF No. 4). Following a brief hearing addressing the motion and jurisdiction, the Court issued the administrative stay, set an expedited briefing schedule, and scheduled the matter for a second hearing. Plaintiffs thereafter filed an Amended Complaint for Mandamus and Injunctive Relief (ECF No. 7) and Defendants filed a *Motion to Reconsider* (ECF No. 12) the administrative stay. Defendants have notified the Court of their intent to have the motion to reconsider constitute their response to the emergency motion. *See* ECF No. 16. Plaintiffs have filed their response (ECF No. 17) to the motion to reconsider. The Court has held the second hearing and heard argument on both motions, including arguments presented in lieu of any written reply brief. Having received additional briefing (ECF Nos. 19-20) after the second hearing, the Court is prepared to rule.

The Court, having fully considered the amended complaint, both motions, the argument at the hearings, and all matters of record, hereby **FINDS** that it lacks jurisdiction over this case. Accordingly, it **DENIES** the emergency motion and **DISMISSES** this action for lack of jurisdiction. It also **FINDS** no basis to reconsider its issuance of the administrative stay and thus **DENIES** the motion to reconsider.

**I. BACKGROUND**

Indisputably, Plaintiffs have undergone immigration proceedings in accordance with 8 U.S.C. § 1225(b)(1). In fact, each plaintiff has a final order of expedited removal through that process. All their removal orders were procured under agency interim rule *Asylum Eligibility & Procedural Modifications*, 84 Fed. Reg. 33,829 (U.S. Dep't of J. July 16, 2019), and were based upon a negative credible fear determination issued in reliance on a "Lesson Plan on Credible Fear of Persecution and Torture Determinations," as revised in April and September 2019 (the "2019 Lesson Plan"). On June 30, 2020, a court vacated the interim rule. *See Capital Area Immigrants' Rights Coalition v. Trump*, 471 F. Supp. 3d 25, 60 (D.D.C. 2020), *appeal filed*, No. 20-5273 (D.C. Cir. Aug. 31, 2020). On October 31, 2020, that same court invalidated the 2019 Lesson Plan. *See Kiakombua v. Wolf*, ___ F. Supp. 3d ___, ___, No. 19-cv-1872 (KBJ), 2020 WL 6392824, at *13 (D.D.C. Oct. 31, 2020).

In December 2020, Plaintiffs filed motions to reopen or reconsider their immigration cases based upon the changing legal landscape. On January 11, 2021, they filed the instant action asserting mandamus jurisdiction under 28 U.S.C. § 1361 and federal question jurisdiction under § 1331 through various provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555, 702, 706(a). Not only do they seek to compel Defendants to act on the motions pending in their immigration cases, but they ask this Court to "issue a temporary administrative stay of removal pending decision on [the] motions to reopen and for reconsideration."

**II. JURISDICTION**

As a preliminary matter, the Court must consider whether it has jurisdiction over this action. "'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). They "must presume that a suit lies outside

2

this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). And Fed. R. Civ. P. 12(h)(3) mandates dismissal of this action "[i]f the court determines at any time that it lacks subject-matter jurisdiction."

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). When a plaintiff seeks judicial review of an action by a federal agency under 28 U.S.C. § 1331, the courts must determine whether there has been "a waiver of sovereign immunity." *Alabama-Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 488 (5th Cir. 2014). The APA may waive such immunity in some circumstances. *See id.* And pertinent here, the APA provides that federal courts shall "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). However, judicial review under the APA is not available when another statute precludes judicial review. *Id.* § 701(a)

Additionally, the Court has original mandamus jurisdiction "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. But mandamus is a "drastic" remedy which is "to be invoked only in extraordinary situations." *Kerr v. U S. Dist. Court for N. Dist. of Ca.*, 426 U.S. 394, 402 (1976). The Fifth Circuit has held that mandamus relief is "available only where government officials clearly have failed to perform nondiscretionary duties" and parties seeking such relief "must demonstrate that a government officer owes . . . a legal duty that is a specific, ministerial act, devoid of the exercise of judgment or discretion," which is "set out in the Constitution or by statute and its performance must be positively commanded and so plainly prescribed as to be free from doubt." *Dunn-McCampbell Royalty Interest, Inc. v. Nat'l Park Serv.*, 112 F.3d 1283, 1288 (5th Cir. 1997).

For purposes of this action, the Court will assume without deciding that either § 1331 (through a waiver of sovereign immunity via the APA) or § 1361 provides a proper basis for federal jurisdiction absent application of a jurisdiction-stripping provision in 8 U.S.C. § 1252. With that assumption, the critical question is whether, under the circumstances of this case, Congress has stripped such jurisdiction from this Court through any provision of § 1252. That statute, titled "Judicial review of orders of removal," includes multiple jurisdiction-stripping provisions. Further, it contains provisions that (1) address general orders of removal, i.e., "other than an order of removal without a hearing pursuant to section 1225(b)(1)," *see* § 1252(a)(1) and (b); (2) only address review relating to § 1225(b)(1), *see* § 1252(a)(2)(A) and (e); and (3) apply more broadly, *see*, *e.g.*, § 1252(a)(5) and (g).

For instance, pursuant to the REAL ID Act of 2005, "a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means of judicial review of an order of removal entered or issued under any provision of [Chapter 12], except as provided in subsection (e)." 8 U.S.C. § 1252(a)(5); *accord Rosales v. Bureau of Imm. & Customs Enf't*, 426 F.3d 733, 736 (5th Cir. 2005) (recognizing that the REAL ID Act amended the jurisdictional provisions of the Immigration and Nationality Act ("INA")). Similarly, that same Act includes the following "Exclusive jurisdiction" provision:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).

These provisions (§ 1252(a)(5) and (g)) apply generally to judicial review of orders of removal. Furthermore, because Plaintiffs were processed through the expedited removal process

4

of § 1225(b)(1), § 1252(a)(2)(A) and (e) are directly applicable to the extent Plaintiffs seek review of their expedited removal orders. However, neither § 1252(a)(1) nor § 1252(b) have any potential applicability given the expedited process at issue in this case.

Plaintiffs argue that no provision of § 1252 applies because they do not seek review of their removal orders in this action. They carefully characterize their claims as seeking only to compel agency officials to act on their pending motions to reopen or reconsider. They stress that they do not seek to compel a particular ruling on those pending immigration motions. Because there is a strong and well-settled "presumption favoring judicial review of administrative action," *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1069 (2020) (citations omitted); *accord Kucana v. Holder*, 558 U.S. 233, 251 (2010), they urge the Court to exercise jurisdiction to review their claims presented under § 1361 and the APA. Such "presumption can only be overcome by 'clear and convincing evidence' of congressional intent to preclude judicial review." *Guerrero-Lasprilla v. Barr*, 140 S. Ct. at 1069 (quoting *Reno v. Catholic Social Services, Inc.*, 509 U.S. 43, 64 (1993)).

For jurisdictional purposes in this case, the Court must determine whether Plaintiffs seek judicial review of their orders of removal despite the characterization of their claims. In finding that § 1252(g) barred jurisdiction in a case in which the plaintiffs characterized their claims "as challenges to the Attorney General's denial of their request for adjustment of status," the Fifth Circuit held that, regardless of the description used, the plaintiffs who faced removal orders "undeniably" sought "to prevent the Attorney General from executing a removal order." *Cardoso v. Reno*, 216 F.3d 512, 516 (5th Cir. 2000). Although *Cardoso* has factual differences from the case now before the Court, the legal principle transcends those differences and dictates that this Court disallow Plaintiffs from conducting an end-run around § 1252 by creative pleading. A party's characterization of a claim does not control whether § 1252 strips jurisdiction from federal courts.

In a persuasive decision, the Seventh Circuit has also held that a party seeking mandamus

under § 1361 "may not avoid the § 1252(g) bar by the simple expedient of recharacterizing a claim as one challenging a refusal to act." *Bhatt v. Bd. of Immigration Appeals*, 328 F.3d 912, 914-15 (7th Cir. 2003). Similarly, the Seventh Circuit held that such a party also cannot "avoid § 1252's grant of exclusive jurisdiction" with the courts of appeal. *Id*. at 915. Plaintiffs argue that *Bhatt* is distinguishable because an action challenging an agency's failure to act does not fall into any of the § 1252(g) discrete categories. *See* ECF No. 19 at 2 (relying on *Patel v. Barr*, No. CV 20-3856, 2020 WL 4700636, at *4 (Aug. 13, 2020), *recon. denied*, 2020 WL 6888250 (E.D. Pa. Nov. 24, 2020)). Although *Patel* supports Plaintiffs' position, the Court finds *Bhatt* persuasive and consistent with *Cardoso*.

Based on the legal reasoning set out in *Cardoso*, the Court finds that Plaintiffs seek review of their removal orders regardless of the characterization of their claims. Consequently, § 1252 is implicated and the Court must determine whether any provision divests this Court of jurisdiction. Like *Cardoso*, the Court could find that § 1252(g) divests jurisdiction on grounds that the claims arise from the decision or action to execute the removal orders. Despite Plaintiffs' characterization of their claims, the fact remains that they only seek reopening or reconsideration to alter the result and avoid their ultimate removal. Their pleading here, furthermore, seeks an administrative stay of their removal pending a decision on their immigration motions. Success in this action would thus preclude the execution of their outstanding removal orders.

Although *Cardoso* addressed § 1252(g), judicial review of an order of removal is broader than the discrete requirements of that section. In other words, even though that provision is limited to claims arising from decisions or actions to commence proceedings, adjudicated cases, or execute removal orders, judicial review in general is not so restricted. Indeed, for "every provision that limits or eliminates judicial review or jurisdiction to review," § 1252(a)(5) broadly defines "judicial review" or "jurisdiction to review" for purposes of Chapter 12 (Immigration and Nationality)

to include (i) "habeas corpus review" under 28 U.S.C. § 2241, "or any other habeas corpus provision"; (ii) 28 U.S.C. §§ 1361 and 1651; and (iii) "review pursuant to any other provision of law (statutory or nonstatutory)." By the terms of this definition, it appears that any mandamus action under § 1361 qualifies as judicial review for the jurisdiction-stripping provisions of § 1252.

But, regardless of whether any mandamus action qualifies as judicial review subject to § 1252, the Court need not rely on that proposition or on § 1252(g) to find a divesture of jurisdiction in this case. Section 1252(a)(2)(A)(i) divests the Court of jurisdiction to review "any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal" under § 1225(b)(1), "except as provided in subsection (e)." Despite Plaintiffs' characterization, their claims arise from or are related to the operation of an expedited order of removal. *See Singh v. Barr*, 982 F.3d 778, 782 (9th Cir. 2020) (characterizing similar-type claims as within § 1252(a)(2)(A)(i)). Likewise, § 1252(a)(5), in conjunction with § 1252(e), divests this Court of jurisdiction even without any claim arising from any decision or action to execute the removal orders. As previously stated, § 1252(a)(5) makes a petition for review filed with the appropriate appellate court "the sole and exclusive means for judicial review of an order of removal . . . except as provided in subsection (e)."

Subsection (e) specifically addresses "Judicial review of orders under section 1225(b)(1)." It first lists what relief is unavailable "[w]ithout regard to the nature of the action or claim and without regard to the identity of the party or parties bringing the action." 8 U.S.C. § 1252(e)(1). In its second and third paragraphs, it permits habeas corpus proceedings and challenges on the validity of the system. *See id.* § 1252(e)(2) & (3). The fourth and fifth paragraphs provide statutory guidance as to court decisions in specific circumstances and the scope of the court's inquiry. *See id.* § 1252(e)(4) & (5).

Although this case undoubtedly relates to § 1225(b)(1), nothing in subsection (e) provides

7

for any other means of review on the facts of this case. Because this is neither a habeas action nor a challenge to the validity of the system, § 1252(e)(2) and (3) are inapplicable. Rather than set forth another means for judicial review, § 1252(e)(1) identifies listed limitations on available relief regardless of "the nature of the action or claim." To survive the jurisdiction-stripping nature of § 1252(a)(2)(A)(i) and § 1252(a)(5), subsection (e) must provide a basis for jurisdiction in this case and it does not.

The Court has reviewed the cases cited by the parties and numerous others. It finds no need to address or distinguish each one. Suffice to say that it finds the cases relied upon herein either binding authority or persuasive on the issues. Based upon the language of § 1252, the Court finds clear and convincing evidence that Congress intended to preclude judicial review by this Court under the circumstances of this case. Based upon the cited jurisdictional-stripping provisions, it does not have jurisdiction under either 28 U.S.C. §§ 1331 or 1361 to judicially review the expedited orders of removal.

For these reasons, the Court finds that it lacks jurisdiction over this case and denies the emergency motion filed by Plaintiffs. It lifts the administrative stay previously issued in this case.

### III. MOTION TO RECONSIDER

Pursuant to Fed. R. Civ. P. 59(e), Defendants ask the Court to reconsider its administrative order of removal based upon new evidence not previously available and to correct a clear or manifest error of law. Plaintiffs, however, have adequately explained the failure to disclose information about prior cases and the Court does not find that any alleged new information warrants reconsideration of the administrative stay. The Court, furthermore, finds no clear or manifest error of law in the issuance of the administrative stay.

Although Defendants invoke Rule 59(e), that rule does not become applicable until after entry of a judgment. Rule 54(b) applies when a party seeks reconsideration of an interlocutory

order. *See McClendon v. United States*, 892 F.3d 775, 781 (5th Cir. 2018) (recognizing the applicability of Rule 54(b)); *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (per curiam) (clarifying relationship between Rule 54(b) and 59(e)).

Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all of the claims." Through "Rule 54(b), the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin*, 864 F.3d at 336 (citation and internal quotation marks omitted). Applying "the more flexible Rule 54(b)" standard, provides broader discretion for the courts to reconsider their interlocutory orders. *Id*. at 337. The more flexible approach reflects the "inherent power" of the "court to afford such relief from interlocutory judgments as justice requires." *Id*. (quoting *Cobell v. Jewell*, 802 F.3d 12, 25 (D.C. Cir. 2015)).

When a court relies "on the wrong rule to deny [a] motion for reconsideration," it abuses its discretion. *Id*. at 336. This is true even when the court cites "to the correct rule," but "incorrectly assume[s] that Rule 59 was sufficiently analogous that its standards apply by analogy." *Int'l Corrugated & Packing Supplies, Inc. v. Lear Corp.*, 694 F. App'x 364, 366 (5th Cir. 2017) (per curiam). Nevertheless, even though Rule 54(b) provides the "means for reconsidering prior interlocutory orders, courts may require a showing of one of the following factors to justify reconsideration: an intervening change in law; availability of previously unavailable new evidence; or a need to correct a clear legal error or to prevent manifest injustice" so long as they recognize that they have the discretion to grant reconsideration even in the absence of any such showing. *Gonzalez ex rel. E.G. v. Bond*, No. 1:16-CV-0068-BL, 2017 WL 3493124, at *7 (N.D. Tex. June 29, 2017) (recommendation of Mag. J.) *adopted by* 2017 WL 3491853 (N.D. Tex. Aug. 14, 2017); *accord*

9

*Rotstain v. Trustmark Nat'l Bank*, No. 3:09-CV-2384-N, 2016 WL 8216509, at *6 (N.D. Tex. July 27, 2016). The critical consideration is whether justice requires relief from the interlocutory order. *Austin*, 864 F.3d at 337.

In this case, justice does not require reconsideration of the Court's issued administrative stay. While making various arguments for reconsideration, Defendants present no adequate reason for the Court to exercise its considerable discretion to reconsider its decision to issue the administrative stay in this case. Based on the arguments presented, the Court does not find that justice requires reconsideration. Further, as already mentioned, no new information warrants reconsideration and for reasons that follow, the Court finds no clear or manifest error of law in the issuance of the stay.

For more than a century, the United States Supreme Court has recognized that courts have jurisdiction to consider their own jurisdiction. *See United States v. Shipp*, 203 U.S. 563, 573 (1906). Earlier this century, the Supreme Court noted that "it is familiar law that a federal court always has jurisdiction to determine its own jurisdiction." *United States v. Ruiz*, 536 U.S. 622, 628 (2002) (citing *United States v. United Mine Workers of Am.*, 330 U.S. 258, 291 (1947)). And in the immigration context, the Fifth Circuit has recognized that it "is certainly correct as a matter of law . . . that this court has jurisdiction to review jurisdictional facts and determine the proper scope of its own jurisdiction." *Flores-Garza v. I.N.S.*, 328 F.3d 797, 802 (5th Cir. 2003).

Interestingly, the government litigant in *Flores-Garza* argued "that, notwithstanding § 1252(a)(2)(C), [the appellate] court retains jurisdiction to determine the scope of its own jurisdiction, and, therefore, to consider any arguments raised in a petition for review challenging the factual and legal determinations thought to trigger the jurisdiction-stripping provisions." *Id.* at 801-02. While recognizing that courts indeed have jurisdiction to consider their own jurisdiction, the Fifth Circuit declined to consider all factual and legal issues the government pressed for

determination. *See id.* at 802. It instead found that "with respect to [the pending] petition for review, [its] inquiry into the scope of [its] jurisdiction must begin and end with the undisputed facts that Flores is an alien who is removable by reason of his two marijuana convictions." *Id.*

With respect to issuance of the administrative stay, the Court finds apt guidance from *United States v. United Mine Workers of America*, 330 U.S. 258 (1947). Although that case did not involve uncertainties caused by jurisdiction-stripping provisions of immigration law, it recognized that federal district courts may issue an injunction to preserve the status quo even when subject matter jurisdiction is disputed or unclear. *See* 330 U.S. at 290-93. It further recognized that "in the matter of federal jurisdiction, which is often a close question, the federal court may either have to determine the facts, as in contested citizenship, or the law, as whether the case alleged arises under a law of the United States." *Id.* at 292 n.57.

In the circumstances before it, the Supreme Court found that "the District Court unquestionably had the power to issue a restraining order for the purpose of preserving existing conditions pending a decision upon its own jurisdiction." *Id.* at 290. Relying on *Shipp*, the Court "provided protection for judicial authority" in such uncertain situations concerning jurisdiction. *Id.* As part of its larger discussion, the Supreme Court recognized that it was the court's duty alone to determine whether it had jurisdiction and "[o]n that question, at least, it was its duty to permit argument, and to take the time required for such consideration as it might need." *Id.* at 291. (quoting *Shipp*, 203 U.S. at 573). Two other legal principles from *Shipp* deserve notation: (1) "[u]ntil [the court's] judgment declining jurisdiction should be announced, it had authority, from the necessity of the case, to make orders to preserve the existing conditions and the subject of the petition" and (2) "[t]he fact that the petitioner was entitled to argue his case shows what needs no proof, that the law contemplates the possibility of a decision either way, and therefore must provide for it." *Id.* at 291-92 (quoting *Shipp*, 203 U.S. at 573).

Although the Court has now determined that it lacks jurisdiction over this action because of jurisdiction-stripping provisions of § 1252, it was well within its purview to issue the administrative stay to maintain the status quo until it could determine the facts and law necessary to resolve the jurisdictional questions. Defendants define the status quo as: "Absent intervention, Plaintiffs would be removed expeditiously, consistent with their final orders of expedited removal." But such definition exemplifies the views of an advocate who has the luxury of being fully committed to their position without regard for alternate positions. Plaintiffs' definition of status quo certainly differs. The Court, moreover, proceeds not as an advocate for any party or position, but as a "neutral arbiter of matters the parties present." *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020). In that role, the Court issued the administrative stay in this case to preserve the status quo, i.e., keeping the Plaintiffs in the United States, so that it could consider the jurisdictional issues before their removal rendered the case moot.

While the Defendants take the position that the Court had all it needed to make a jurisdictional determination at the first hearing, legal issues are more clear cut from the eyes of an advocate than they are from the view of a neutral arbiter who must consider the positions of all the various parties. As recognized in *United Mine Workers*, both legal and factual issues can present close questions for the courts in making jurisdictional determinations. One only need to review the *Patel* case relied upon by Plaintiffs to see a judicial split on the question of jurisdiction. Defendants argue that *Patel* was wrongly decided based upon the court's erroneous view of the legal issues. After careful consideration of the legal issues and precedent, this Court has declined to follow *Patel*. But Defendants now contend it was a clear and manifest error of law for this Court to issue the administrative stay to provide the time needed for thoughtful contemplation of the factual and legal issues. The Court could not disagree more.

With that said, however, the Court understands potential concerns and abuses that could

arise from issuing an administrative stay for purposes of determining jurisdictional issues. But the courts are well-equipped to address abuses of the litigation process. Moreover, the prospects for abuse, while present, appear minimal because it is the Court itself that decides whether the circumstances justify such an administrative stay. And such decision is an exercise of each court's sound discretion. Each case will present its own facts, legal issues, and challenges. Some cases may present a relatively straight-forward jurisdictional issue that is quickly determined on binding precedent. Or perhaps a particularly persuasive case or line of cases resolves any jurisdictional issue. That the courts may issue an administrative stay is merely another tool in their arsenal.

This is not the first court to issue such an administrative stay. *See Vijender v. Wolf*, No. 19-CV-3337,  2020 WL 1935556, at *1 (D.D.C. Apr. 22, 2020) (noting that the court had granted a "temporary stay of removal" to obtain "expedited briefing regarding the court's jurisdiction over the matter"); *Alam v. Nielsen*, 312 F.Supp.3d 574, 577 (S.D. Tex. 2018) (noting that, "[i]n recognition of the jurisdictional question's complexity, the Court has thus far stayed the removal of Alam"); *M.S.P.C. v. U.S. Customs & Border Prot.*, 60 F. Supp. 3d 1156, 1160 (D.N.M. 2014) ("At the hearing, the Government conceded that this Court has jurisdiction to issue a stay of removal while it considers its own jurisdiction. The Court entered a limited stay to consider the jurisdictional issues and requested additional briefing on the Suspension Clause issue."), *motion for relief from judgment granted*, No. CIV 14-769 JCH/CG, 2015 WL 7454248 (D.N.M. Sept. 23, 2015). Nor will it be the last. The Court recognizes that the cited cases present varied facts and legal issues. But such diversity highlights the case-specific aspects that inform the courts' issuance of such stays. Such issuance, even in the immigration context, is not a sign that the sky is falling. The *Alam* case is particularly notable in that it appears to refute Defendants' position that entry of an administrative stay to determine jurisdiction is an unused process in courts within the Fifth Circuit. Although the normal process may not include issuance of such an administrative stay for purposes

of jurisdiction, it is not error for a court to exercise its discretion to issue such a stay in circumstances it deems appropriate.

The Court notes, furthermore, that it issued its administrative stay for the very limited purpose to determine its own jurisdiction. In their amended complaint, Plaintiffs seek a more involved administrative stay pending ruling on their immigration motions to reopen and for reconsideration. While both stays are characterized as "administrative" the latter is of a different character. Issuance of such a stay does not fall within the realm of the limited administrative stay issued in this case. Concerns about that more extensive stay requested in the amended complaint has no bearing on the stay issued by this Court.

For all these reasons, the Court denies the motion to reconsider.

## IV. CONCLUSION

For the foregoing reasons, the Court **FINDS** that it lacks jurisdiction over this case and **DENIES** *Plaintiffs' Emergency Application for Temporary Restraining Order* (ECF No. 2), which the Court has considered as a motion for preliminary injunction in accordance with its Administrative Order to Stay Removal (ECF No. 4). Because the Court has now determined that it lacks jurisdiction over this matter, it **LIFTS** the administrative stay previously entered in this case. Pursuant to Fed. R. Civ. P. 12(h)(3), the Court **DISMISSES** this action for lack of jurisdiction. It will enter final judgment by separate document. In addition, the Court **FINDS** that justice does not require any reconsideration of the Court's issuance of the administrative stay of removal and thus **DENIES** *Defendants' Motion to Reconsider* (ECF No. 12).

**SIGNED this 25th day of January 2021.**

_____
**JASON PULLIAM
UNITED STATES DISTRICT JUDGE**